Maria Crimi Speth (012574)
Laura Rogal (025159)
**JABURG & WILK, P.C.**
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
lar@jaburgwilk.com
(602) 248-1089

Attorneys for Plaintiff Eric J. Werner and Anna C. Werner
as Trustees of the Eric and Anna Werner Trust
dated September 13, 2001

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | In proceedings under Chapter 7 |
| ROBERTA LITES, | Case No. 2:11-bk-12544 GBN |
| Debtor. | Adversary No.: 2:11-ap-01434-GBN |
| ERIC J. WERNER and ANNA C. WERNER as Trustees of the ERIC AND ANNA WERNER TRUST DATED SEPTEMBER 13, 2001, | **AMDENDED ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT** |
| Plaintiff, | (Assigned to Hon. George B. Nielsen) |
| v. | |
| ROBERTA LITES, | |
| Defendant. | |

Plaintiff Eric J. Werner and Anna C. Werner as Trustees of the Eric and Anna Werner Trust dated September 13, 2001, for its Complaint against debtor Roberta Lites, alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Eric J. Werner and Anna C. Werner as Trustees of the Eric and Anna Werner Trust dated September 13, 2001 (the "Werner Trust") is a trust formed under the laws of the state of Arizona.

2. Debtor, Roberta Lites ("Debtor") is an unmarried woman who at all times relevant hereto has resided in Maricopa County, Arizona.

3. Debtor filed a Petition for Relief under Chapter 7 of the United States Bankruptcy Code on or around May 3, 2011 (the "Petition").

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

5. Venue is proper in the United States Bankruptcy Court for the District of Arizona pursuant to 28 U.S.C. § 1409(a). The Complaint is timely pursuant to Rule 4004, Federal Rules of Bankruptcy Procedure.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). To the extent that any allegations are deemed to relate to non-core proceedings, said allegations fall within the purview of 28 U.S.C. § 157(b)(4). The Werner Trust consents to this Court's jurisdiction to enter findings of fact and conclusions of law to the extent the Court may rule on any non-core issue in this proceeding.

## GENERAL ALLEGATIONS

7. Debtor is the long time live-in girlfriend of David Thomas ("Thomas").

8. Debtor was, at relevant time, the President of SBS Pronet, Inc.

9. The Trustees of the Werner Trust, Eric Werner and Anna Werner (collectively, the "Werners"), have known Thomas for more than ten years. Thomas was the management information systems person for the Werners' businesses during that time period, as well as a personal friend of the Werners.

10. Thomas was the manager and designated tax matters partner for Black & White LLC.

11. Black & White, LLC, which is also known as Black + White, LLC, ("Black & White") is an Arizona limited liability company that owned software programs known as Spam Elimination and eGuarddog.

12. Thomas refers to those software programs collectively as the "spam elimination project".

2

# THOMAS'S REPRESENTATIONS TO THE WERNER TRUST

13. In or about March of 2005, Thomas induced Werner to invest $270,000 in the spam elimination project by making the following misrepresentations:

   a. Thomas misrepresented that the $270,000 was being used to buy out the ownership interest of Sue Caldwell in Black & White.

   b. Thomas misrepresented that Werner would own a membership interest in Black & White.

   c. Thomas presented false written financial statements to Werner that materially and substantially misstated the earnings and assets of Black & White.

   d. Thomas made the following misrepresentations on the Black & White Profit & Loss Report for the year 2004 that he provided to Werner:

   - Overstated the total income by exactly $640,000.
   - Overstated the total SBS Commission expense by exactly $10,000.
   - Included $109,200 in SBS Development expenses which was not recorded in QuickBooks.
   - Overstated the total Merchant Fees expense by exactly $22,000.
   - Overstated the total Dedicated Facility Charge expense by exactly $100,000.
   - Overstated the total Licenses and Permits expense by exactly $50,000.
   - Overstated the total Office Expense by exactly $20,000.
   - Presented a net income of $30,516 compared to the actual loss of $123,866, for a net income overstatement of $154,382 for the year 2004.

   e. Thomas made the following misrepresentations on the Balance Sheet Report for March 30, 2005 that he provided to Werner:

   - Overstated the total Checking and Savings account balance by approximately $219,976.
   - Overstated the total Other Current Assets by approximately $16,964.

3

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

- Overstated the total Fixed Assets by approximately $85,803.
- Presented a net equity of $231,203 compared to the actual negative equity of $88,416 for a net equity position overstatement of $319,619.

14. On April 8, 2005 an Interest Purchase Agreement was entered into which provided that "David M. Thomas (also known as DMT Technology, LLC) Member of Black & White, LLC agrees to sell 40.909% of Member interest in Black & White to Eric J. Werner or Anna C. Werner, Trustees of THE ERIC AND ANNA WERNER TRUST dated Sept. 13, 2001 for TWO HUNDRED SEVENTY THOUSAND DOLLARS & NO/100 ($270,000)."

15. As of 2004, Black & White, LLC was owned by the Debtor (55%), Bert Alanko (22.5%) and Sue Caldwell (22.5%).

16. The Werners believed that their initial investment was to purchase the membership interest of Susan Caldwell, who at the time was a member of Black & White.

17. Thomas later testified that "the conversations were that the money was going to be used for, and it was to acquire Sue Caldwell's interest or buy her out. That's what the money was going to be used for."

18. The statements made by Debtor regarding whose interest in Black & White the Werner Trust was going to be purchasing were "important to [Werner Trust] at the time [it] made [its] decision."

19. In reliance on the false financial statements, the Werner Trust paid the full $270,000 provided for in the Interest Purchase Agreement.

20. From August through December of 2005, Thomas induced the Werner Trust to invest an additional $150,000 in the spam elimination project by making the following misrepresentations:

    a. Thomas misrepresented that Werner was buying out the ownership interest of Bert Alanko in Black & White;

    b. Thomas misrepresented that Werner would own an additional membership interest in Black & White.

4

14709-1/MCS/MCS/959012_v1
Case 2:11-ap-01434-GBN    Doc 30    Filed 02/16/12    Entered 02/16/12 14:38:23    Desc
Main Document    Page 4 of 12

c. Thomas presented false written financial statements to Werner that materially and substantially misstated the earnings and assets of Black & White.

d. Thomas made the following misrepresentations on the Black & White December 6, 2005 Profit & Loss Report for the three month period of July 1, 2005 through September 30, 2005 that he provided to Werner:

- Overstated the total income by approximately $125,747.
- Included $108,900 in Web Design expense which was not recorded in QuickBooks.
- Overstated the total Marketing Production expense by approximately $235,928.
- Overstated the total Consulting Fees expense by approximately $31,584.
- Overstated the total Dedicated Facility Charge expense by approximately $52,960.
- Presented a net loss of $393,690 compared to the actual loss of $90,065, for a net income understatement of $303,625 for the third quarter of 2005.

e. Thomas made the following misrepresentations on the Black & White December 6, 2005 Profit & Loss Report for the two month period of October 1, 2005 through December 6, 2005:

- Overstated the total income by approximately $354,968.
- Overstated the total Web Design expense by $32,666.
- Overstated the total Media Buys expense by approximately $91,440.
- Overstated the total Consulting Fees expense by approximately $14,435.
- Overstated the total Dedicated Facility Charge expense by approximately $30,160.
- Presented a net income of $175,957 compared to the actual loss of $17,388, for a net income overstatement of $193,345 for the period from October 1, 2005 through December 6, 2005.

5

f. Thomas made the following misrepresentations on the Black & White December 6, 2005 Balance Sheet Report as of November 30, 2005:

- Overstated the total Checking and Savings account balance by approximately $390,932.
- Overstated the total Other Current Assets by approximately $6,964.
- Overstated the total Fixed Assets by exactly $82,000.
- Presented a net equity of $492,196 compared to the actual negative equity of $89,369 for a net equity position overstatement of $581,565.

21. On August 10, 2005, an Interest Purchase Agreement was entered into which provided that "David M. Thomas (also known as DMT Technology, LLC) Member of Black & White, LLC agrees to sell an additional equivalent 12.5% of Member interest in Black & White to Eric J. Werner or Anna C. Werner, Trustees of THE ERIC AND ANNA WERNER TRUST dated Sept. 13, 2001 for ONE HUNDRED FIFTY THOUSAND DOLLARS & NO/100 ($150,000)."

22. From August through December of 2005, The Werner Trust paid the full $150,000 provided for in the August 10, 2005 Interest Purchase Agreement.

**THOMAS AND LITES COLLUDE TO TRANSFER
THE WERNER TRUST FUNDS**

23. Instead of using any part of the $420,000 to buy out Ms. Caldwell or Mr. Alanko, Thomas transferred $288,211.96 of the funds to Debtor who used it to pay her bills and purchase home furnishings and a Mercedes vehicle.

24. Instead of using any part of the $420,000 to buy out Ms. Caldwell or Mr. Alanko, Thomas transferred $53,300 of the funds to SBS Pronet, Inc., an entity which was the alter ego of Debtor.

25. Debtor knew that the funds were invested by The Werner Trust and that the funds were to be used to buy out Bert Alanko and Sue Caldwell.

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

26. Debtor knew that the funds were held in constructive trust for that specifically agreed upon purpose.

27. Thomas and Debtor both knew that as soon as the Werner Trust learned that the funds were not used to purchase Alanko and Caldwell's membership interest in Black & White, the Werner Trust would demand return of the funds.

28. Debtor participated in transferring the funds into a money market account that she used to pay her bills and did so with the knowledge that by using the funds in that manner: (1) it would be a violation of the agreed upon purpose and (2) it would eliminate the Werner's ability to recover the funds.

29. Thomas fraudulently conveyed the funds to Debtor, with Debtor's knowledge and assistance that the purpose of the transfer was to keep the funds out of the hands of the Werner Trust.

30. Debtor used the funds to pay her bills and then declared bankruptcy in an effort to shield herself from liability for having colluded with Thomas to defeat the Werner Trust's rights to return of their funds.

31. Thomas's transfer of assets to Lites and SBS Pronet, Inc. were made for less than fair consideration; such transfers rendered Thomas insolvent; and such transfers were done intentionally, with an evil mind, for Thomas's and Lites's own benefit, and with reason to know, or with a conscious disregard of the substantial risk, that the transfer would damage Thomas's creditors, including the Werner Trust.

32. Defendant Thomas's transfer of his assets to Lites and SBS Pronet, Inc. were made with the actual intent to hinder, delay, or defraud the Werner Trust, a creditor of Thomas.

33. On June 13, 2008, Thomas told the Werners in an email that he had been working to get his name off of his assets in the event that he would need to go bankrupt.

. . . .

. . . .

. . . .

7

14709-1/MCS/MCS/959012_v1
Case 2:11-ap-01434-GBN   Doc 30   Filed 02/16/12   Entered 02/16/12 14:38:23   Desc
Main Document    Page 7 of 12

## THOMAS ACTIVELY CONCEALS THE FRAUD

34. When the Werner Trust began inquiring about the investment, Thomas actively concealed the fraud.

35. On May 4, 2006, Thomas again provided the Werner Trust with certain financial documents, including a Black & White Balance Sheet, reflecting that as of May 4, 2006, Black & White, LLC had a total of $442,029.53 in checking and savings, and had earned total gross income of $1,077,319.42 from January 1 through May 4, 2006 and net income on a cash basis was $90,943.15.

36. The May 4, 2006 financial statements were materially misstated and were used to induce Werner to forego commencing legal action.

37. On May 20, 2007, the Werner Trust made a formal demand for records and information of the business and financial condition of DMT Technology.

38. Instead of providing the requested documents, Thomas represented to the Werner Trust that he had received an offer to purchase the spam elimination assets and that he expected a possible sale.

## ALTER EGO

39. Thomas and Lites disregarded the corporate existence of SBS Pronet, Inc., DMT Technology, and Black & White, by undercapitalizing the companies, failing to maintain formalities of separate company existence, commingling company and personal funds, diverting company property for other companies' and members' personal use, and intermixing of members' and companies' actions and assets.

40. Thomas and Lites used and controlled SBS Pronet, Inc, DMT Technology, and Black & White as a mere tool or instrument to carry out their personal and business plans and to affect a fraud upon third persons, including but not limited to Plaintiff.

41. Defendants Thomas and Lites and the companies SBS Pronet, Inc., DMT Technology and Black & White have such unity of interest and ownership that the separate personalities of Thomas and Lites and that of SBS Pronet, Inc., DMT Technology and Black & White ceased to exist.

8

42. The companies, SBS Pronet, Inc, DMT Technology and Black & White were mere alter egos Thomas and Lites.

43. Defendants Thomas, Lites, DMT Technology and Black & White are each, jointly and severally, liable to the Werner Trust for the debt owed to it.

**THE WERNER TRUST LEARNS OF THE FALSITY OF THOMAS'S REPRESENTATIONS TO IT**

44. The Werner Trust learned in late 2008 or early 2009 that their investment was not used to buy out Sue Caldwell nor Bert Alanko's interests in Black & White and that Alanko had never heard of the Werners and that Thomas had never mentioned the possibility of their interests being purchased.

45. On April 24, 2009, the Werner Trust filed a lawsuit in the Maricopa County Superior Court titled *Eric J. Werner and Anna C. Werner as Trustees of the Eric and Anna Werner Trust dated September 13, 2011 v. David M. Thomas, et al.*, CV2009-012908 (the "Lawsuit").

46. After filing the Lawsuit, on or around August 25, 2009, the Werner Trust obtained the tax returns of Black & White and learned that the financial statements which Debtor had previously provided to them were false.

47. In contrast to the profit and loss statement, the Black & White tax return for 2004 reflects that the income of Black & White in 2004 was $4,814. This tax document was not provided to the Werner Trust prior to its investment in Black & White, and was only discovered during the Lawsuit.

48. In contrast to the balance sheet provided by Thomas, Black & White's actual banking records reflect that Black & White had just $2,202.65 in the bank as of March 31, 2005. These banking records were not provided to the Werner Trust prior to its investment in Black & White, and were only discovered during the Lawsuit.

49. The Lawsuit was contentiously litigated amongst all parties for nearly two years, with the trial scheduled to begin on May 24, 2011.

9

14709-1/MCS/MCS/959012_v1
Case 2:11-ap-01434-GBN    Doc 30    Filed 02/16/12    Entered 02/16/12 14:38:23    Desc
Main Document    Page 9 of 12

50. Debtor filed her Notice of Filing Bankruptcy on May 2, 2011. As a result of the Debtor filing her Petition, the Lawsuit is subject to the automatic stay.

## COUNT ONE

## NON-DISCHARGEABLE DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

51. The Werner Trust reiterates each of the above allegations as if set forth in full.

52. Thomas falsely and fraudulently represented to the Werner Trust that their funds would be used to purchase Caldwell and Alanko's interest in Black & White.

53. The Werner Trust relied on the truth of that representation when paying the money.

54. As is set forth above, Lites obtained money from the Werner Trust by a false representation.

55. The actions of Lites justify an order from this Court declaring the damages owed by Lites to Werner are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

56. Lites obtained money from the Werner Trust by actual fraud in that she participated in transferring the funds into a money market account that she used to pay her bills and did so with the knowledge that by using the funds in that manner: (1) it would be a violation of the agreement to use the funds to purchase an interest in Black & White; and (2) it would eliminate the Werner's ability to recover the funds.

57. Lites colluded with Thomas for Thomas to fraudulently convey the funds to Lites, with Lites' knowledge and assistance that the purpose of the transfer was to keep the funds out of the hands of the Werner Trust.

WHEREFORE, Plaintiff Eric J. Werner and Anna C. Werner as Trustees of the Eric and Anna Werner Trust dated September 13, 2001 requests that the Court enter a non-dischargeable judgment against Debtor Robert Lites as follows:

A. For actual damages in an amount to be proven at trial, but in any event, an amount not less than $341,511.96;

B. That the Court decree that the Debtor's indebtedness to the Werner Trust is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (6);

C. That the Court award the Werner Trust its reasonable attorneys' fees and costs; and

D. For such other and further relief as the Court deems just and proper.

DATED this 16th day of February, 2012.

**JABURG & WILK, P.C.**


s/Maria Crimi Speth
Maria Crimi Speth
Laura Rogal
Attorneys for Plaintiff Eric J. Werner and Anna C. Werner as Trustees of the Eric and Anna Werner Trust dated September 13, 2001

*Certificate of Service*

I hereby certify that on the 16th day of February, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Paul A. Conant
Melissa A. Emmel
CONANT & ASSOCIATES PLC
Northern Trust Bank Tower, Suite 925
2398 East Camelback Road
Phoenix, Arizona 85016
paulconant@conantlawfirm.com
melissaemmel@conantlawfirm.com
Attorneys for Defendant Roberta Lites

And copy of the foregoing mailed this 16th day of February, 2012, to:

Denise K. Aguilar
Aguilar Law Firm, P.C.
4425 East Agave Road
Suite 124
Phoenix, Arizona 85044
Attorney for Debtor

11

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Dina Anderson
21001 North Tatum Boulevard, #1630-608
Phoenix, Arizona 85050
Trustee

Ryan W. Anderson
GUTTILLA MURPHY ANDERSON
5415 East High Street
Suite 200
Phoenix, Arizona 85054
Attorney for Trustee

U.S. Trustee
Office of the U.S. Trustee
230 North First Avenue
Suite 204
Phoenix, AZ 85003

s/Debra Gower

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

14709-1/MCS/MCS/959012_v1