Maria Crimi Speth (012574)
Laura Rogal (025159)
**JABURG & WILK, P.C.**
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
lar@jaburgwilk.com
(602) 248-1089

Attorneys for Plaintiff Eric J. Werner and Anna C. Werner
as Trustees of the Eric and Anna Werner Trust
dated September 13, 2001

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| In re: | In proceedings under Chapter 7 |
|---|---|
| ROBERTA LITES, | Case No. 2:11-bk-12544 GBN |
| Debtor. | Adversary No.: 2:11-ap-01434-GBN |
| | **MOTION FOR RECONSIDERATION OF COURT'S AUGUST 2, 2013 MINUTE ENTRY AWARDING DEFENDANT'S ATTORNEYS' FEES** |
| ERIC J. WERNER and ANNA C. WERNER as Trustees of the ERIC AND ANNA WERNER TRUST DATED SEPTEMBER 13, 2001, | |
| Plaintiff, | |
| v. | |
| ROBERTA LITES, | |
| Defendant. | |

Plaintiff the Werner Trust respectfully requests that the Court reconsider its ruling of August 2, 2013, whereby the Court granted the request made by Defendant Roberta Lites for an award of her attorneys' fees, and granted that award in the amount of $40,000.

## I. THE DEBT OF DEFENDANT WAS NOT CONSUMER DEBT

This Court has incorrectly held that the Werner Trust requested determination of dischargeability of a consumer debt. Rather, the Werner Trust, a non-institutional family trust, requested that the court determine that the debt incurred through its investment in a business venture was not dischargeable.

Whether or not debt qualifies as "consumer debt" is subject to statutory interpretation. Consumer debt is defined as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). This debt was incurred for a business investment purpose. "Debt incurred for business ventures or other profit-seeking activities is plainly not consumer debt." *See In re Kelly*, 841 F.2d 908, 913 (9th Cir. 1988).

The Court's reasoning in holding that Lites' debt was consumer debt was that Plaintiff's theory in this case was that Lites' discharge was questionable because Lites spent the money on herself for consumer purposes. While Plaintiff certainly stressed during this case that Lites did spend the money on herself, that was never the theory of the non-dischargeability claim. That Lites spent the money on herself was an important fact because (1) it demonstrated the unjust nature of the circumstances (the Werner's hard earned money was wasted away); (2) it demonstrated Lites' knowledge of the investment (you can't spend hundreds of thousands of dollars without knowing that the money had come into the account); and (3) it demonstrated that the funds were not kept in the constructive trust that was intended.

A review of the operable complaints demonstrates unquestionably that Plaintiff's theory of the case was not that the claim was non-dischargeable because Lites spent the money on consumer products.

2

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

The original complaint against Lites (Document 1) was based on the theory that the debt was not dischargeable because it was obtained by false representations. The theory was that because 11 U.S.C. §523(a)(2)(A) does not state that the false representations had to be made by the debtor, it was enough for non dischargeability to allege that Thomas made the false representations and that Lites received the money. The original complaint against Lites, thus, simply alleged that Thomas made false representations to the Werner Trust to obtain $420,000 from it. (Paragraphs 13-14, 20). The original complaint alleged that Lites obtained money from the Werner Trust by a false representation (Thomas' false representation)(Paragraph 22).

Lites moved to dismiss the original complaint because it was Thomas, not Lites, who made the false representations. In its response (Document 11), the Werner Trust argued that 11 U.S.C. §523(a)(2)(A) states that a debt is not dischargeable if it is obtained by false pretenses or false representation and that the statute had no requirement that it be the debtor who made the false representation. (Document 11, page 2). The Werner Trust argued that Lites' debt should not be dischargeable because it was money that was obtained by false representations and that nothing in 11 U.S.C. §523(a)(2)(A) requires that they must be the false representations of debtor. The Werner Trust argued, "if the Court were to read into the statute the non-existent requirement that it be the debtor who made the misrepresentation, a savvy con artist like Thomas could avoid repercussions by swindling money, giving the money to his girlfriend, and then both filing bankruptcy." (Document 11, page 3).

This Court disagreed with the Werner Trust and did, indeed read into 11 U.S.C. §523(a)(2)(A) that it had to be the debtor who made the false representation, even though 11 U.S.C. §523(a)(2)(A) includes no such express requirement.

The Werner Trust then filed an amended complaint. (Document 30). The Amended Complaint alleged that Lites knew that the funds were held in constructive trust for the specifically agreed upon purpose of buying out Bert Alanko and Sue Caldwell. (Document 30, paragraph 25-26). The Amended Complaint alleged that Lites

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

"participated in transferring the funds into a money market account that she used to pay her bills and did so with the knowledge that by using the funds in that manner: (1) it would be a violation of the agreed upon purpose; and (2) it would eliminate the Werner's ability to recover the funds." (Document 30, paragraph 28). The Amended Complaint alleged "Thomas fraudulently conveyed the funds to Debtor, with Debtor's knowledge and assistance that the purpose of the transfer was to keep the funds out of the hands of the Werner Trust." (Document 30, paragraph 29). The Amended Complaint alleged, "Thomas's transfer of assets to Lites and SBS Pronet, Inc. were made for less than fair consideration; such transfers rendered Thomas insolvent; and such transfers were done intentionally, with an evil mind, for Thomas's and Lites's own benefit, and with reason to know, or with a conscious disregard of the substantial risk, that the transfer would damage Thomas's creditors, including the Werner Trust." (Document 30, paragraph 31). In Count One of the Amended Complaint, the Werner Trust alleged that the debt was non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) because:

> 56. Lites obtained money from the Werner Trust by actual fraud in that she participated in transferring the funds into a money market account that she used to pay her bills and did so with the knowledge that by using the funds in that manner: (1) it would be a violation of the agreement to use the funds to purchase an interest in Black & White; and (2) it would eliminate the Werner's ability to recover the funds.
>
> 57. Lites colluded with Thomas for Thomas to fraudulently convey the funds to Lites, with Lites' knowledge and assistance that the purpose of the transfer was to keep the funds out of the hands of the Werner Trust.

The complaint and the amended complaint in this proceeding makes it very clear that the Werner Trust did not request a determination of dischargeability of a consumer debt so as to trigger 11 U.S.C. §523(d).

Courts defining consumer debt look to the purpose for which the debt was incurred. When a "credit transaction involves a profit motive, it is outside the definition of consumer credit" *See In re Booth*, 858 F.2d 1051, 1055 (5th Cir.1988); *see also In re*

*Runski*, 102 F.3d 744 (4th Cir.1996). Because debt characterization is determined when the debt is incurred, the debt in this case retained its character as arising out of fraud. The original complaint in this case alleged that this debt was incurred when the money was obtained from the Werner Trust by misrepresentation. The Amended Complaint in this case alleged that this debt was incurred when Lites colluded with Thomas to fraudulently transfer the money from Thomas to Lites. The wrongdoing was not spending the money, the wrongdoing was taking money by false pretenses and taking money intended for a business investment.

Lites has encouraged the Court to alter the character of the debt for what she references as equitable reasons. This is not a situation where the Werner Trust is a big lending institution or a well-funded entity. It would be even more inequitable to not only prevent the Werner Trust from recovering their own fraudulently taken money from Lites, which Lites admits to spending, but then to also stick the Werner Trust with $40,000 of attorneys' fees that Lites didn't even incur. There is no allowance for the argument made by Lites or to conclude that the debt to be transmuted to consumer debt simply because the contrary determination would result in denial of the requested attorneys' fees.

## II. PLAINTIFF'S POSITION WAS SUBSTANTIALLY JUSTIFIED

In the alternative, if the Court does find the character of the debt changed from a business profit purpose to consumer debt because of the way it was used, Lites still is not entitled to attorneys' fees because the position of the Werner Trust was substantially justified. To satisfy the "substantial justification" standard, all that needs to be shown is that the Werner Trust had a reasonable factual and legal basis for its claim. *See In re Hunt*, 238 F.3d 1098, 1103 (9th Cir.2001). That burden was met.

The bare facts of this case are undisputed. Money was transferred from Plaintiff to third-party David Thomas, who at the time was the boyfriend of Lites. Instead of taking the money from Plaintiff and utilizing for the stated purpose, Thomas then transferred Plaintiff's money to Lites without consideration to Plaintiff. After receiving the
Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000
5

14709-14709-00001\LAR\LAR\1130372.1
Case 2:11-ap-01434-GBN   Doc 68   Filed 09/03/13   Entered 09/03/13 18:15:54   Desc
Main Document   Page 5 of 8

significant amount of Plaintiff's money from Thomas, Lites used that money to pay off her car, among other personal expenses.

The fact that Lites prevailed on her summary judgment motion has no bearing on the fact that the claims of the Werner Trust were substantially justified. "There is no presumption of a lack of substantial justification just because a debtor prevailed on summary judgment." *In re Machuca*, 483 B.R. 726, 735 (B.A.P. 9th Cir. 2012). The substantial justification requirement "should not be read to raise a presumption that the creditor was not substantially justified simply because it lost." *In re Carolan*, 204 B.R. 980, 987 (9th Cir. BAP 1996); *see also In re Hill*, 775 F.2d 1037, 1042 (9th Cir.1985); S.Rep. No. 98–65 at 59 ("The standard, however, should not be read to raise a presumption that the creditor was not substantially justified, simply because it lost the challenge."). Even if the Court finds that the theory advocated by the Werner Trust was novel, because it is a reasonable reading of the statute it still is substantially justified.

Creditors should "not be unduly discouraged from pursuing well-founded nondischargeability actions." *In re Machuca*, 483 B.R. at 734. Given that framework, the Complaint filed by the Werner Trust was reasonable within the existing case law. Because the filing of the Complaint was justified, and the character of the debt is not consumer debt, Lites is not entitled to an award of attorneys' fees.

### III. SPECIAL CIRCUMSTANCES EXIST TO MAKE THE AWARD OF ATTORNEYS' FEES UNJUST

Even if the Court were to conclude that the debt was consumer debt, and the claims of the Werner Trust were not substantially justified, fees *still* should not be awarded because special circumstances exist which make any such award unjust.

Awarding attorneys' fees under §523(d) is intended to be punitive and deter creditors from making frivolous claims in a bankruptcy case. *See In re Shaw*, 114 B.R. 291 (Bkrtcy.D.Utah 1990); *see also* S.Rep. No. 98–65, at 9–10 (1983). By limiting it to consumer debt, the intent of the statute is to deter institutional lenders from pursuing individual debtors for non-dischargeability.

6

14709-14709-00001\LAR\LAR\1130372.1
Case 2:11-ap-01434-GBN    Doc 68    Filed 09/03/13    Entered 09/03/13 18:15:54    Desc
Main Document    Page 6 of 8

The Werner Trust is not an entity that should be punished any further than it has been. The Werner Trust is a family trust formed by Eric ("Rick") Werner and Anna Carol Werner. They invested almost a half million dollars of their hard earned money in Thomas' scam and never recouped a penny of it. They then spent years in litigation incurring their own extensive attorney fees trying to recover their funds while Thomas and Lites talked their attorney into working for free. On the eve of trial in the Superior Court case, Thomas, Lites and their entities all filed bankruptcy, forcing the Werner Trust to start over in the quest to recover their investment. The Werners have been financially devastated by the lost investment and the litigation. Their own business was foreclosed upon by their lender and their long-term marriage could not withstand the strain. They recently divorced.

An award of attorney's fees here would not further the statute's purpose to "level the playing field" between unequally positioned litigants so as to deter abuse of the bankruptcy laws and its spirit. *See In re Verdon*, 95 B.R. 877 (Bkrtcy.N.D.N.Y.1989).

Rather, an award of attorney fees against a family trust that has already suffered immeasurably because of this investment would be a travesty of justice.

## IV. THE ATTORNEYS' FEE AWARD IS UNREASONABLE

As stated in the Werner Trust response to the Motion for Attorney fees, all of the time incurred by Lites' counsel after March 20, 2012 was unnecessary because on March 20, 2012, the Werner Trust offered to dismiss the non-dischargeability claim in exchange for Lites withdrawing her objection to the proof of claim. While Lites initially refused to do so, she eventually admitted that she had no standing to object to the proof of claim. The fees incurred before March 20, 2102 were $31,037.50 and those include duplicated efforts and other evidence of overbilling as set forth in the Werner Trust response to the Motion for Attorney fees.

## V. CONCLUSION

For all of the foregoing reasons, the Werner Trust requests that the Court reconsider its ruling and deny Lites' Motion for Attorney fees.

DATED this 3rd day of September, 2013.

                                          **JABURG & WILK, P.C.**

                                          s/Maria Crimi Speth
                                          Maria Crimi Speth
                                          Laura Rogal
                                          Attorneys for Plaintiff Eric J. Werner and Anna C. Werner as Trustees of the Eric and Anna Werner Trust dated September 13, 2001

### *Certificate of Service*

I hereby certify that on the 3rd day of September, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Paul A. Conant
Melissa A. Emmel
CONANT & ASSOCIATES PLC
2398 East Camelback Road
Suite 925
Phoenix, Arizona 85016
Attorneys for Defendant
Email: paulconant@conantlawfirm.com

                                          s/Maria Crimi Speth

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000